U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT -4  AM 10: 51

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDITH L. DECORTE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 03-1239 |
| EDDIE JORDAN, ET AL. | SECTION "K"(1) |

## ORDER AND REASONS

Before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50 or, alternatively, Motion for New Trial filed by defendant, Eddie Jordan in his official Capacity as District Attorney of Orleans Parish ("Jordan"). (Doc. 368). Having reviewed the pleadings, memoranda, exhibits, testimony and the relevant law, the Court denies in part and grants in part the relief sought.

**Background**

The factual allegations of this suit have been extensively outlined by this Court in its ruling on the Motion for Summary Judgment filed by Jordan (Rec. Doc. 186), and the Court reiterates those by reference. This case was tried before a jury in New Orleans, Louisiana, commencing on March 7, 2005. The jury returned a verdict in favor of plaintiffs on March 30, 2005, for a total of



$215,125.00 in compensatory damages and a total of $1,476,663.00 in back pay and back benefits. Subsequently, the Court rendered judgment on the front pay issues awarding plaintiffs a total of $1,157,749.35 in front pay and front benefits, and entered a final judgment on May 31, 2005. Subsequently, the instant motion was filed seeking relief pursuant to Fed. R. Civ. P. 50 for judgment as a matter of law or, alternatively, pursuant to Fed. R. Civ. P. 59 for a new trial. The Court will first address the relevant standards it will use in analyzing these motions.

**Rule 50 Standard**

Under Rule 50 of the Federal Rules of Civil Procedure, the Court must determine whether there is sufficient evidence to support the jury's verdict, and in so doing all evidentiary conflicts are to be resolved in favor of the successful party and that party is to be given the benefit of all reasonable inferences. As stated in the seminal case *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir.1969), in considering a motion for judgment as a matter of law, the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelming in favor of one party that the Court believes that reasonable men could arrive at a contrary verdict, granting the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. *See Rutland v. Sundowner Offshore Services, Inc.*, 1992 WL 236136 (E.D.La. Sept. 2, 1992).

A fundamental principle of litigation is that it is the function of the jury as the traditional finder of fact, and not the Court, to weigh evidence. *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 164 (5th Cir.1990). Weighing conflicting evidence and the inferences to be drawn from that evidence, and determining the credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict. *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir.1988). The Fifth Circuit has defined substantial evidence as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Transoil (Jersey) Ltd. v. Belcher Oil Co.*, 950 F.2d 1115, 1118 (5th Cir.1992). Therefore, a jury verdict must be upheld unless "the facts and inferences point so strongly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). The Court can not simply substitute its judgment for that of the jury, for that would deprive litigants of their right to trial by jury.

**Rule 59 Standard**

A trial court has discretion to grant a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Although Rule 59 does not specify the grounds for new trial, case law demonstrates that a new trial may be granted if the district court finds that the size of the verdict is against the weight of the evidence, the damages awarded are excessive or inadequate, or the trial was unfair or marred by prejudicial error. *Dunn v. Consolidated Rail Corp.,*, 890 F. Supp. 1262, 1287 (M.D.La. 1995), *citing* Wright & Miller, *Federal Practice and Procedure*, § 2807 (1973); *Scott v. Monsanto*

*Company*, 868 F.2d 786, 789 (5th Cir. 1989). In making its determination, the lodestar is whether the verdict is against the great weight of the evidence or would result in a miscarriage of justice. With these standards in mind, the Court will address the issues presented by Jordan. Furthermore, as the defendant in essence seeks relief under both standards based on the most of the same issues, the Court will dispose of each issue using both standards, unless otherwise indicated.

**Jury's Finding of Intentional Discrimination Was Contrary to the Law and the Evidence**

Defendant has couched his motion in the context of discrimination as to all plaintiffs rather than as to any individual plaintiffs; therefore, the Court will analyze the motion in the same fashion. In denying Jordan's Motion for Summary Judgment brought in his official capacity (Doc. 168), the Court found the following:

> Defendant asks this Court to rule in his favor and grant this motion for summary judgment as a matter of law urging that there are no issues of material fact. This request requires considerable temerity in light of the following uncontested facts, which are illustrative but not exclusive and which the Court has previously outlined herein:
>
> 1. Prior to Jordan taking office, 136 persons were employed in non-attorney positions, 78 or 57.35% were Caucasian and 54, or about 39.7% were African American.
>
> 2. Eight days after being sworn into office, Jordan terminated 56 employees, 53 Caucasian, 2 African American.
>
> 3. Thus, 96.3% of African Americans retained their positions whereas only 32 % of the Caucasians retained their positions in that first 8 day period.
>
> The Court does not require a statistician to determine these numbers present a question of fact as whether the terminations were race neutral.
>
> In addition:

4

> 4. The EEOC found that race played a factor in the terminations.
>
> 5. Jordan is the only policy maker for the DA's Office and is responsible for all hirings and firings.
>
> 6. There was cultural diversity plan recommending that the racial composition of staff at levels should be more reflective of the Parish's population within the first 100 days of taking office.
>
> 7. The qualifications of the terminated employees were not a factor in the decision to fire them.

(Doc. 168 at 17-18).

This evidence was presented to the jury, and obviously, the jury found it credible, as did the Court. This evidence overwhelmingly supports the verdict rendered by the jury. Jordan attempted to focus on Jordan's right to hire, rather than the illegal terminations which were the quintessence of this lawsuit. As stated, eight days after taking office, Jordan terminated 56 employees, remarkably only 2 were African-American, resulting in the unequivocal fact that 96.3% of the African-American employees from the Connick office were retained, and only 32% of the Caucasian employees were retained. Moreover, African-Americans constituted only .035% of those persons terminated after 8 days. These figures are eloquently persuasive coupled with Jordan's campaign statements, his Cultural Diversity Committee Report, and the fact that qualifications did not factor into any decision. It could be argued that it leaves race as a predominant factor for many of the terminations since the great majority of African-American Connick employees did not render any political assistance to Jordan, but were retained unlike their Caucasian counterparts. Jordan attempted to give various explanations for the disparity shown above; however, the jury did not find these explanations credible, which is their sole prerogative.

Notwithstanding the facts noted above, Jordan emphasizes that no plaintiff testified that he displayed any discriminatory animus to any of them. Moreover, Jordan testified that he did not know the race of the persons that were terminated. However, this argument ignores the fact that the jury was instructed that in the event that it found that Stephanie Butler, chairperson of the Non-Legal Personnel Retention and Development Committee, exerted influence over Jordan with respect to the hiring, retaining and firing decisions and that she had race-based animus, it was within the jury's discretion to impute this to Jordan for actions taken in his official capacity on or after January 13, 2003, the date he was sworn into office.

In both motions, Jordan contends that the Cultural Diversity Committee Report was not an affirmative action plan and its mere existence was not sufficient to prove discriminatory intent. The Court determined that the Cultural Diversity Committee Report was an affirmative plan in its Order and Reasons ruling on Plaintiff's Motion for Partial Summary Judgment dated February 28, 2005. (Doc. 207). The Court incorporates those reasons herein by reference. Jordan acknowledges that the Cultural Diversity Committee Report would not survive strict scrutiny and is therefore not a valid plan. In its reasons, the Court noted that it had been provided no cases by any party defining the elements of an affirmative action plan, be it valid or invalid. However, the Cultural Diversity Committee Report made many references to statistics concerning the racial make-up of the District Attorney's Office and the City of New Orleans. It also contained specific recommendations to create a "culturally diverse staff" reflective of the Parish's population. The Court therefore held, and still holds, that it is an affirmative action plan, albeit more rudimentary than others. An affirmative action plan is not based on its length but rather on its provisions and recommendations. Jordan adamantly contended that he did not act based upon the recommendations contained in the report.

6

Nonetheless, the jury either did not find that testimony probative or found that there was sufficient other evidence in the record to support its verdict. It is also noted that the Cultural Diversity Committee Report mirrored the spirit of some of the statements made by Jordan in his campaign.

As in the pretrial motions, Jordan complains of the inaccuracy of the statistical analysis done by Dr. McDaniel. The Court stands by its previous rulings made thereon denying Jordan's late-filed *Daubert* motion and incorporates it here by reference. (See Doc. No. 197). Moreover, the jury was quite able to do the mathematics required to show the gross disparity in terminations between Caucasian and African-American employees, and the more significant gross disparity in the retention of African-American employees as opposed to Caucasian employees. Jordan then had the opportunity to explain to the jury the disparity; the Jury then had the obligation to weigh the testimony and render a verdict which it did in a deliberative and conscientious fashion. Also, the jury heard each of the plaintiffs testify and heard testimony as to each plaintiff's qualifications as well as the qualification of the persons who were retained. This was done department by department, individual by individual in this over three week trial. Again, the jury did not need a statistician to evaluate this testimony.

All of the preceding issues were raised in the context of Rule 50 and 59. The Court specifically finds that Jordan has failed to meet the standard required to obtain the relief sought under either rule–Rule 50 or 59 of the Federal Rules of Civil Procedure. In Jordan's Rule 59 Motion, there are discrete issues all relating to damages which must be specifically addressed by the Court.

**Jury Erroneously Awarded Damages to Seven Plaintiffs**

Jordan contends that seven of the plaintiffs should receive no damages as the jury found that they would have been terminated regardless of race. Jordan argues that in a mixed-motive case, this is an affirmative defense, and if proved, the plaintiff in question is not entitled to damages. In the Title VII context, the plaintiffs would be entitled to injunctive relief and attorneys' fees if sought under these circumstances. In the context of the § 1983 cause of action, Jordan argues that they are not entitled to any damages. In the Jury Interrogatories, the Court divided the § 1983 claims and the Title VII claims. In the Title VII section of the Jury Interrogatories, Question No. 10, the jury was asked to place an "X" by any plaintiff that Jordan would have terminated even if race were not a motivating factor. The jury indicated that eight persons[1] fit that category and the jury awarded seven of them back pay and the Court awarded six of them front pay.

It appears that the jury awarded these damages pursuant to their findings with respect to those plaintiffs' § 1983 claims as there was no specific question concerning the affirmative defense in the §1983 section of the jury interrogatories. Moreover, the instructions following the questions would have also indicated to the jury that an award should be made as to the § 1983 claim. It must be noted that no objections to the Jury Interrogatories were made with respect to 1) Terri C. Bonnecarre, (2) Helen T. Draughon, (3) Trudy A. Guerrera, (4) Linda H. Hellmer, (5) Frank J. Lippert, (6) Cathy P. Orgeron, (7) Katherine Theriot, and (8) George Vogt, III.

Although the jury literally followed the form, its award for damages in the § 1983 claim should be eliminated in the event the plaintiffs are not entitled to them, and any affirmative defense

---

[1] The eight persons were (1) Terri C. Bonnecarre, (2) Helen T. Draughon, (3) Trudy A. Guerrera, (4) Linda H. Hellmer, (5) Frank J. Lippert, (6) Cathy P. Orgeron, (7) Katherine Theriot, and (8) George Vogt, III. Bonnecarre received no damages and Orgeron did not receive front pay.

has not been waived. The Jury's verdict is not inconsistent and not irreconcilable. The Jury clearly specified which plaintiffs would have been terminated regardless of race. The elements and components of this question apply equal to § 1983 and Title VII. Therefore, the jury clearly expressed its finding in that regard and the Court is now required to apply the appropriate law.

As pointed out by Jordan, the Jury Charges clearly stated in connection with the § 1983 claim that "[i]f you find that Jordan would have, more likely than not, made the same employment decision to terminate plaintiff even if the unlawful motive was not present, you should so indicate on the verdict form."(Jury Charges at p.19). The Court is of the opinion that this is a correct statement of the law, and all damages except attorneys' fees as to these seven plaintiffs that received damages should be vacated.

Plaintiffs first argue that the mixed-motive defense is unavailable in a § 1981 claim. Plaintiffs claimed a violation of § 1981 through § 1983. The case cited by plaintiff for this proposition[2] were decided prior to the Supreme Court's decision in *Texas v. Lesage*, 528 U.S 18 (1999). However, *Lesage* holds that the Government may avoid liability by proving that it would have made the same decision without the impermissible motive with specific reference to a racial discrimination brought under § 1983. This Court acknowledges that the Supreme Court remanded the § 1981 claim stating "[w]hether these claims and whether Lesage has abandoned injunctive relief on the grounds that petitioners are continuing to operate a discriminatory admissions process are matters open on remand." *Id.* at 22. Notwithstanding this statement, the Court finds that the defense has been available to defendants in § 1983 claims and this § 1981 claim was instituted through the vehicle of § 1983. Additionally, plaintiffs' counsel candidly admitted that they had been unable to

---

[2] *Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345 (8th Cir. 1988).

9

find any case that would support a damage award in a § 1981 case where the trier of fact determined that a plaintiff would have been terminated regardless of race. Nonetheless, these plaintiffs are entitled to attorneys' fees pursuant to the 1991 Amendments to Title VII as they prevailed as the jury found that race was a motivating factor in their dismissal.

Plaintiffs then urge based on Fed. R. Civ. P. 8(c) that defendant waived the affirmative defense by not raising it in his answer or pretrial order. Aside from the fact that there were no objections to the jury instructions as to this issue, or the jury interrogatories, the Court finds that the defense was not waived. In support of the waiver argument plaintiffs' argue that the affirmative defense was not included in the pretrial order. In the Pretrial Order Contested Issues of Law No. 30 (Doc. 184, p. 24) states, "If the plaintiffs prove that race was a motivating factor in the decision of Defendant, Eddie Jordan in his official capacity, and/or in his individual capacity, to fire them, can Defendant(s) meet their burden under *Mt Healthy* of proving that plaintiffs' suffered no damages as a result thereof." This paragraph references *Mt. Healthy City School District Board of Educ. v. Doyle*, 429 U.S. 274 (1977). That case dealt with causation and held that merely because there is a constitutional violation does not deprive the defendant that it would have reached the same decision even in absence of the constitutionally protected conduct. *Id.* at 287. Although oblique, the only logical inference from this insertion, is that it raises the question whether Jordan would have fired any of the plaintiffs regardless of any constitutionally protected violation. Moreover, as noted above, plaintiffs did not object to the jury instructions or the jury interrogatories. Accordingly, Jordan's motion will be granted in this regard.

**Emotional Distress Claims**

Jordan contends that plaintiffs' evidence of emotional distress was insufficient to support the damages awarded by the jury, and plaintiffs' awards for emotional distress were "disproportionate to the injury sustained" or "contrary to right reason" requiring this Court to reduce same. *Vadie v. Mississsippi State Univ.*, 218 F.3d 365, 376 (5th Cir. 2000).

The jury was very meticulous in its award of emotional damages. The jury heard the testimony of 43 plaintiffs and made varying awards to 35 of the 43 plaintiffs. The other eight plaintiffs received no award for emotional damage. The awards to the 35 plaintiffs ranged from $250.00 to $13,500.00. Only 10 of the plaintiffs received damages in excess of $10,000.00. Each plaintiff that received an award testified about their emotional distress with some testimony obviously being more detailed than others. Plaintiffs have cited several Fifth Circuit cases upholding awards for emotional distress based solely on plaintiffs' testimony.[3]

Considering the public nature of the terminations, the trauma of losing one's job, and the testimony of each plaintiff, it is the Court's opinion that the awards are well within the parameters established by the Fifth Circuit in the cases cited herein. The Court will not disturb the jury's verdict in this regard.

---

[3] *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (an award of $100,000 based upon testimony concerning depression, weight loss and intestinal problems); *Giles v. General Electric, Co.*, 245 F.3d 474, 489 n.26 (5th Cir. 2001) ($100,000 for emotional distress similar to the plaintiff in *Forsyth*); *Oden v. Oktibbeba Cty. Miss.*, 246 F.3d 458, 470 (5th Cir. 2001) ($20,000.00 for mental anguish and emotional distress from denial of promotion solely based on plaintiff's testimony); *Migis v. Pearle Vision, Inc.*, 135 F3d. 1041, 1046 (5th Cir. 1998) ($5000 award based on low self-esteem, serious financial hardships in relation to her new-born child, anxiety attacks, stress and sleeplessness).

11

**Incorrect Response to Jury Question**

Jordan argues that the Court did not respond correctly to one of the multiple questions asked by the jury. The question according to Jordan was whether they "could take into account the freedom Connick was able to exercise in choosing his employees in comparison to Eddie Jordan." In reality, the question as written was, "Should we take into account the freedom Connick [the former District Attorney] was able to exercise in choosing his employees in comparison to Eddie Jordan?" The Court responded in open court as follows: "The racial composition of Mr. Connick's office is not an issue in this case. The district attorney may hire and fire any person, so long as it is not on the basis of race or any other prohibited reason under federal and state law. Connick's hiring practices are not at issue in this case. Again, it says you must look at all of the instructions and not that, not anything in isolation." Jordan argues that response is in error and had a prejudicial effect on his case.

Initially, the Court notes that although Jordan had access to the transcript, the memorandum only stated part of the question and part of the response. The word "should" in the jury's question demonstrates whether the jury was required to consider Connick's hiring practices, whereas the word "could" implies that the jury wanted to consider Connick's hiring practice. That being said, the Court's response was correct and not prejudicial.

Additionally, Jordan argues that the Court should have instructed the jury that it was appropriate to consider the freedom Connick exercised in choosing his employees, and that the Court's failure to do so was erroneous and prejudicial. In answering the question the Court did tell the jury that Connick could hire and fire whom he pleased as long as it was in accordance with the law. Also, in objecting to the Court's response, the defendant's counsel said that the answer should have been "solely to refer the jury to the first paragraph of page 11 of the instructions and that the

last sentence and the last sentence in the answer should have been deleted." Therefore, the alleged failure to instruct was not objected to by Jordan. Accordingly, the motion is denied in this respect.

**Prejudicial Error During Jury Selection**

The Court feels constrained to say that it is particularly bewildered by Jordan's position on this issue. The Court conducted voir dire from approximately 9:00 a.m. until 9:00 p.m. The voir dire was conducted individually and out of the hearing of the rest of the venire. All attorneys were allowed to ask follow-up questions after the Court went through its initial questions. This individual voir dire was focused on the publicity and knowledge of the events concerning the events that provided the basis for the instant lawsuit.

Prior to the voir dire, the Court with the input of counsel, sent a questionnaire to 125 prospective venire persons due to the high profile nature of the case and the fact that the trial may last at least a month. The Court had a venire panel of 78 persons. The Court gave each side 12 peremptory challenges. The Court notes that the defendant only used 10 of his peremptory challenges.

The racial composition of the jury was 8 Caucasian and 2 African-Americans. Therefore, 20% of the jury was African-American. The Court is not certain what the racial ratio of the Eastern District of Louisiana, but it does not appear to the Court that it was substantially different than the racial mix than the jury pool of the entire Eastern District of Louisiana. Jordan vaguely refers to repeated objections but mentions no specific instances when a challenge for cause ruling was prejudicial. The contention has absolutely no merit.

Furthermore, to establish a prima facie violation of the fair cross-section requirement, Jordan must show:

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) the representation of this group in the venire panel is not reasonable in relation to the number of such persons in the community; (3) that this under-representation is due to systematic exclusion in the jury selection process." *Id.* (citing *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)). African-Americans qualify as a "distinctive group" for purposes of the fair cross-section requirement. *United States v. Williams,* 264 F.3d 561, 569 (5th Cir.2001). Because the district court determined that the selection process was random and computer-generated, there could be no "systematic exclusion" of African-Americans. This factual determination is reviewed for clear error. *McKinney,* 53 F.3d at 670.

*U.S. v. Wheeler,* 79 Fed.Appx. 656, *661, 2003 WL 22469741, **4 (5th Cir. 2003).

The Court is certain that Jordan is not asserting that there is a systematic exclusion of African-Americans in the jury pool of the United States Court for the Eastern District of Louisiana. He has certainly presented no evidence to this effect. Selection process is random and computer generated and in accordance with law. *Id.* Accordingly,

**IT IS ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50 or, alternatively, Motion for New Trial filed by defendant, Eddie Jordan in his official Capacity as District Attorney of Orleans Parish ("Jordan") (Doc. 368) is **GRANTED** with respect to the front and back pay awards to Helen T. Draughon, Trudy A. Guerrera, Linda H. Hellmer, Frank J. Lippert, Katherine Theriot, and George Vogt, III. and back pay as to Cathy P. Orgeron, and is **DENIED** in all other aspects.

**IT IS FURTHER ORDERED** that the Judgment shall be amended to reflect this decision; in addition, pursuant to Fed. R. Civ. P. 60(a) the Judgment shall be amended to correct certain clerical errors contained therein as follows:

1. The total award for Robert Egan shall be amended to $86,297 in lieu of $53,915;

2. The total award for Arthur Perrot shall be amended to $114,528.67 in lieu of $101,695.18;

3. The total award for Florita Thompson shall be amended to $75,557.66 in lieu of $83,213.33;

4. The $24,370.33 award for Ira Austin shall be allocated to front benefits in lieu of front pay.

5. The award for Adolph Lopez's front pay shall be amended to $10,150.00 in lieu of $10,151.00.

Houma, Louisiana, this 30th day of September, 2005.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE