

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**JUDITH L. DECORTE, et al**                    **CIVIL ACTION**

**VERSUS**                                       **NO: 03-1239-SRD-SS**

**EDDIE JORDAN, et al**

## REPORT AND RECOMMENDATION

This matter has been referred pursuant to 28 U.S.C. 636(b)(1)(B) to the undersigned for a

report and recommendation on the proper amount of attorney fees to be awarded. Rec. doc. 357.[1]

Forty-three plaintiffs prevailed in their employment discrimination claims against the defendant,

Eddie Jordan ("Jordan") in his official capacity. The District Court entered judgment in their favor

and against Jordan totaling $2,484,625.67. Rec. doc. 404. The plaintiffs seek an award of attorneys'

fees of $1,691,609.32. Rec. doc. 390 at p.5.

## BACKGROUND

Jordan was elected District Attorney ("DA") of Orleans Parish on November 6, 2002. A

transition committee, headed by Stephanie Butler, interviewed persons who were then employed by

---

[1] The judgment of May 26, 2005 specifies that the proper amount of costs to be awarded shall be
determined by the Clerk of Court pursuant to L.R. 54. Id. Therefore that issue is not before the undersigned.

the DA's office and considered resumes from outside of the DA's office.  Butler prepared recommendations regarding the persons to be terminated.  On January 21, 2003, eight days after taking office, Jordan implemented Butler's recommendations and fired 56 of the 136 non-attorney employees.  Of those terminated, 53 were Caucasian; one was Hispanic; and two were African-American.  Forty-four of those terminated employees were the plaintiffs in this case consisting of 43 Caucasians and one Hispanic.  Within six months of taking office, Jordan hired 64 African American non-attorneys in all of the various divisions of the DA's office.[2]

Judith Decorte, one of the terminated employees, filed her complaint on May 1, 2003.  Rec. doc. 1.  The complaint was thereafter amended.  Rec. docs. 2 and 9.  In response to motions to dismiss by the City of New Orleans and Jordan (Rec. docs. 16 and 21), the plaintiffs filed a third amended complaint.  Rec. doc. 33.  On October 20, 2003, the District Court found that a number of issues raised by the motions to dismiss were rendered moot by the third amended complaint.  Rec. doc. 37.  It granted Jordan's motion as to the plaintiffs' claim with respect to La. Rev. Stat. Ann. § 51:2231 and denied the remainder of the motion.  Id.

Jordan's motion to dismiss the claims made against him in his official capacity was denied.  Rec. doc. 186.  The District Court commented that the statistics presented by the plaintiffs provided direct evidence of discrimination.  Id. at p. 7.  The District Court also denied Jordan's motion for summary judgment on the claims against him in his individual capacity.  Rec. doc. 208.  The District Court determined that there was a genuine issue of a material fact as to whether Jordan, in his

---

[2] This summary is taken from the District Court's order and reasons of February 21, 2005.  Rec. doc. 186 at pp. 2-7.

individual capacity, knew race was a factor in the hiring and terminations as a jury could reasonably find that he instigated and implemented the goals of a plan to hire and fire based on race. Id. at p. 12. The plaintiffs' motions for summary judgment against Jordan in both capacities were denied. Rec. docs. 207 and 255. Prior to the trial there were a number of in limine rulings. Some of these were in favor of the plaintiffs and some were against them.[3]

The case was tried before a jury commencing on March 7, 2005. Rec. doc. 280. The jury returned a verdict in favor of the plaintiffs on March 30, 2005 on the claims against Jordan in his official capacity and in Jordan's favor on the claims against him in his individual capacity. Rec. doc. 334. After submission by the parties, the District Court resolved the front pay issue. Rec. docs. 355-56. A judgment was signed on May 26, 2005. The damages for forty-two plaintiffs were $2,812,979.03 and one plaintiff was awarded nominal damages of $1.00. Rec. doc. 357.

The parties filed post-trial motions. The plaintiffs' motion for partial new trial and/or for amendment of judgment pursuant to Fed. R. Civ. P. 59 (Rec. doc. 361) was denied. Rec. doc. 402. The defendant's renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50 or, alternatively, motion for new trial (Rec. doc. 368) was granted in part and denied in part. Rec. doc. 403. On September 30, 2004, the District Court signed an amended judgment in favor of the plaintiffs and against Jordan for $2,484,625.67. Rec. doc. 404. As a result of that, seven of the plaintiffs were denied any recovery. Rec. doc. 404. The District Court said that, "[n]onetheless, these plaintiffs are entitled to attorneys' fees pursuant to the 1991 Amendments to Title VII as they

---

[3] See Rec. docs. 197, 248-51 and 263.

3

prevailed as the jury found that race was a motivating factor in their dismissal." Rec. doc. 403 at p. 10.

GENERAL DISCUSSION

1. As Prevailing Parties, Plaintiffs are Entitled to an Award of Reasonable Attorney's Fees.

The plaintiffs are entitled to reasonable attorney's fees as "prevailing parties" in this Title VII case. See 42. U.S.C. § 2000e-5(k). This term has been defined in various ways, but "a typical formulation is that plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit."[4] Hensley v. Eckerhart, 461 U.S 424, 103 S.Ct. 1933, 1939 (1983). "This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.' " Id. Jordan does not dispute plaintiffs' contention that they are the prevailing parties in this action.

2. The Lodestar.

The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the "lodestar." Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. Hensley v. Eckerhart, 103 S. Ct. 1933, 1939-40 (1983). However, "the district court [retains] broad discretion in setting the appropriate award of attorneys' fees." Hensley, 103 S. Ct. at 1939-40.

---

[4] Though the U.S. Supreme Court in Hensley was considering an award of attorney's fees under 42 U.S.C. § 1988. the Hensley Court specifically stated that: "the standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " 103 S.Ct. at 1939, n. 7.

In calculating the number of hours reasonably expended on the litigation, whether the total number of hours claimed were reasonable, and whether specific hours claimed were reasonably expended, the court must first ascertain the nature and extent of the services supplied by plaintiffs' attorneys. Hensley, 103 S. Ct. at 1939-40. The district court must eliminate excessive or duplicative time. Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993); see Hensley, 103 S. Ct. at 1939-40. Next, the court must value the service according to the customary fee and quality of the legal work. The relevant market for purposes of determining the prevailing hourly billing rate to be paid in a fee award is the community in which the district court sits. Scham v. District Courts Trying Criminal Cases, 148 F.3d 554, 558 (5th Cir. 1998).

"The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)." Forbush, 98 F.3d at 821; see also Walker v. United States Dep't of Hous. and Urban Dev., 99 F.3d 761, 771-73 (5th Cir.1996) (describing the limited circumstances in which an adjustment to the lodestar is appropriate). The Johnson factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

In calculating the lodestar, the hours worked and the rates claimed should be supported by the billing records of the attorney making the claim for fees. Watkins, 7 F.3d at 457. The court then determines the number of hours that were "reasonably expended" in litigation of the claim. The Fifth Circuit instructs that compensable hours are determined from the attorney's time records and include all hours reasonably spent. Shipes v. Trinity Industries, 987 F.2d 311, 319 (5th Cir. 1993). Counsel is then required to exercise billing judgment to exclude from the fee request any "hours that are excessive, redundant or otherwise unnecessary." Hensley, 103 S. Ct. at 1939-40.

a. The Hours Reasonably Expended.

The plaintiffs are requesting an award of fees for more than 4,000 hours. This request includes 3,787.50 hours for attorneys, 282.30 hours for paralegals and 85 hours for law clerks. The undersigned carefully reviewed the record and the time and billing records submitted by counsel and recommends that the plaintiffs be awarded fees for 3,532 hours for attorneys, 220 hours for paralegals and 25 hours for law clerks.

Clement Donelon

Donelon began his representation of the plaintiffs on February 21, 2003.[5]  The plaintiffs request that 1,690.50 hours be included in the lodestar for Donelon. Rec. doc. 390 at p. 5. Donelon was plaintiffs' lead counsel and he delegated and coordinated assignments to his co-counsel. Plaintiffs cite his performance of the following activities:   drafting pleadings; determining the required statistical evidence; preparing written discovery; deriving statistical evidence from

---

[5]  Rec. doc. 358, Exhibit A ("Donelon Affidavit") at para. 36.

discovery responses; taking depositions; preparing oppositions to a motion for partial summary judgment and motions in limine; preparing post-trial memoranda; examining witnesses and delivering opening and closing arguments at trial.  Jordan responds that Donelon failed to exercise billing judgment and that his hours are excessive and duplicative.

Donelon's minimum time entries were quarter-hour segments.  He did not provide any explanation for this practice.  In two unpublished opinions, the Fifth Circuit has refused to interpret regulations governing the U.S. Department of Labor's Benefits Review Board as authorizing "rounding up" to quarter-hour increments for work that was actually performed in a shorter period of time.  See Ingalls Shipbuilding, Inc. v. Director OWCP [Fairley], No. 89-4459 (5th Cir. July 25, 1990), (unpublished) and Ingalls Shipbuilding v. Director, OWCP [Briggs], No. 94-40066, 46 F.3d 66 (5th Cir. Jan. 12, 1995) (unpublished).  According to 5th Cir. Rule 47.5.3, "[u]npublished opinions issued before January 1, 1996, are precedent."  See also Conoco, Inc. Director, OWCP [Prewitt], 194 F.3d 684, 689 (5th Cir. 1999).  Donelon's award will have to be adjusted to account for that.

Donelon's records reflect a duplication of activity with Vaughan Cimini.  For example, in the first year of the litigation there were numerous telephone conversations and meetings with Cimini.  From February 21, 2003 through December 31, 2003, Donelon spent approximately 170 hours on the litigation.  About 68 of these hours were spent in meetings or telephone conversations with Cimini.  In some instances they participated in the same activity, for example a telephone conversation with a third person.  Thus, in the first year of the litigation Donelon spent about 40% of his time doing the same thing as Cimini.  Donelon Affidavit, Exhibit 1.

Billing judgment refers to the usual practice of law firms writing off unproductive, excessive,

or redundant hours. <u>Walker</u>, 99 F.3d at 769. Donelon's billing records indicate that 36.50 hours or only two percent of the total sought were written off in the exercise of billing judgment. The plaintiffs are charged with the burden of proving that their counsel exercised billing judgment. The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. <u>Walker</u>, 99 F.3d at 769-70. <u>See also</u> <u>Alberti v. Klevenhagen</u>, 896 F2d 927, 930 (5th Cir. 1990) and <u>Leroy v. City of Houston</u>, 831 F.2d 576, 586 (5th Cir. 1987). In <u>Walker</u>, 99 F.3d at 769-700, the Fifth Circuit determined that the appropriate reduction, where there was no evidence of the exercise of billing judgment, was 15%.

Donelon's hours will be reduced by 202.50 or by about twelve percent to reflect the insufficient exercise of billing judgment and the rounding up of entries to quarter-hour segments. 1,488 hours (1,690.50 minus 202.50) will be included in the lodestar for Donelon. The issue of the duplication of effort with Cimini will be addressed in the determination of the appropriate hourly rate.

### Vaughan Cimini

Cimini began working on the case with Donelon on February 21, 2003.[6] The plaintiffs contend that 1,025.50 hours should be included in the lodestar for Cimini. Rec. doc. 390 at p. 5. They urge that during the "procedural phase" of the litigation, Cimini and Donelon represented the plaintiffs. The exact duration of this phase is not described. Cimini's activity is described as including: meetings with clients; drafting pleadings; preparing plaintiffs for their depositions;

---

[6] Rec. doc. 358, Exhibit D ("Cimini Affidavit") at paras. 20-21.

attending their depositions; attending the depositions of experts; preparing the response to defendant's motion in limine; preparing trial exhibits and bench books; preparing witnesses for trial; and examining twenty witnesses at the trial.  Jordan responds that Cimini's hours are excessive and duplicative of work performed by other attorneys representing the plaintiffs.  He argues that tasks performed by Cimini should have been completed by secretaries or support staff.  In particular, he challenges entries for time spent:  filing pleadings; soliciting clients; preparing the amended complaint; drafting affidavits; attending depositions with other counsel for plaintiffs; soliciting expert witnesses; and overseeing law clerks.  He notes that Cimini only reduced his hours by 41.3 hours for billing judgment or about four percent of the total sought and contends this was inadequate. The plaintiffs vigorously object to each of these arguments.

Like Donelon's time entries, Cimini's entries do not reveal any entries for less than quarter-hour segments.  Cimini has not provided an explanation for this practice.  There are instances that are strongly suggestive of rounding.  For example on May 21, 2003 there are four separate entries for meetings with clients, where each meeting is described as lasting one half hour.  Cimini Affidavit, Exhibit 1 at p 7.  There are similar instances throughout Cimini's time records.

Cimini has many entries for travel, including for travel time to and from Donelon's office for meetings with him.  Id. at p. 4.  Although it was reasonable for more than one lawyer to undertake the representation of the plaintiffs, the team of lawyers representing the plaintiffs should have functioned in a manner akin to a single firm and the fee application should reflect practices associated with a single firm representing the plaintiffs.  In that respect, it was inappropriate for Cimini to charge travel time to meet with Donelon.  It is also inappropriate to charge for travel that

9

was limited to the metropolitan area. A review of the time records indicates that Cimini charged between forty and fifty hours for travel time.

Cimini has entries for time spent on a claim against the City of New Orleans, but the City was dropped as a defendant. The entries on June 5 and 6 and July 7 and 8, 2003 for the claim against the City should have been deleted. Id. at pp. 10-11.

The hours sought for Cimini will be reduced by fourteen percent to account for the insufficient exercise of billing judgment, the use of quarter-hour segments as minimum time entries and the improper inclusion of time for travel and work on the unsuccessful claim against the City. 882 hours (1,025.50 minus 143.50) will be included in the lodestar for Cimini. Jordan's complaint concerning the duplication of effort and the nature of the tasks performed by Cimini is discussed below in connection with the hourly rate assigned to him in the computation of the lodestar.

<u>Lisa Brener</u>

In July, 2004, Brener was asked by Donelon and Cimini to enroll as additional counsel of record for the plaintiffs.[7] The plaintiffs seek 691.30 hours for inclusion in the lodestar for Brener. They report that her principal activities included: meeting with all of them in groups at various times and many of them individually; preparing many of them for their depositions and trial testimony; questioning many of them at the trial; examining and cross-examining other witnesses at the trial; deposing members of the Jordan transition team; preparing jury instructions and interrogatories; and working with plaintiffs' financial expert and questioning the expert at the trial.

---

[7] Rec. doc. 358, Exhibit E ("Brener Affidavit") at para. 12.

10

Jordan raises the following issues:  Brener spent time on legal research that an experienced employment lawyer would not have been required to perform; she spent excessive time on catch-up legal research that was duplicative of work performed by other counsel for plaintiffs; she included time that should have been treated as secretarial overhead, for instance time spent preparing exhibits; and she did not exercise billing judgment.  The plaintiffs respond that:  the legal research was required; that it was the ability of the plaintiffs' team of lawyers to discuss and argue about the issues among themselves that led to the formulation of the trial strategy in the case; that Brener's preparation of the bench books was an important part of the trial strategy; and that Brener exercised billing judgment prior to making her entries.  Brener contends that if she recorded the time spent on all of the conversations with her co-counsel, the plaintiffs would have sought far more hours than the amount actually sought on her behalf.

The review of Brener's time records indicates that, unlike Donelon and Cimini, she did not use quarter-hour segments as her minimum time entry.  Instead she billed in tenths of an hour.  Time spent on claims that were not pursued was not written off.[8]  Some time entries reflect travel to court, but Brener's office was located only nine blocks from the courthouse. [9]

The only evidence of billing judgment is that three entries were written off.[10]  The amount of time that was written off is not indicated.  The plaintiffs are charged with the burden of proving that their counsel exercised billing judgment.  The proper remedy when there is no evidence of

---

[8]  See entries for July 19, 2004 on research of first amendment claim.  Brener Affidavit, Exhibit A.

[9]  See entries for March 20 and 28, 2005.  Brener Affidavit, Exhibit A.

[10]  See entries for October 1, 2004, January 17, 2005 and February 21, 2005.  Brener Affidavit, Exhibit A.

billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. Walker, 99 F.3d at 769-70. The plaintiffs and Brener contend that she exercised billing judgment when she recorded her time entries and argue that this is self-evident from the reasonableness of the time entries. To the contrary, some of the entries, for example the work on the claim that was not pursued, indicate a lack of billing judgment. The amount sought for Brener will be reduced by ten percent or 69.30 hours because of the insufficient evidence of billing judgment, the improper inclusion of travel time and work on claims that were not pursued. The lodestar will include 622 hours (691.30 minus 69.30) for Brener.

Richard Leefe

On January 7, 2005, Leefe enrolled as additional counsel for the plaintiffs. Rec. doc. 133. The plaintiffs request that 320.20 hours be included in the lodestar on behalf of Leefe. They cite: his preparation of Dr. McDaniel, an expert for the plaintiffs; his examination of Dr. McDaniel; and his cross-examination of defendant's expert. Jordan contends that there is no evidence that Leefe exercised billing judgment. He urges that portions of Leefe's time should be written off because of excessive meetings with plaintiffs' co-counsel. While Jordan acknowledges that there was a need for some meetings, he contends that the number of such meetings on Leefe's billing statement was excessive. The plaintiffs respond that Leefe exercised billing judgment prior to the submission of the statement.

A review of Leefe's billing records reveals that he did not use quarter-hour segments as the minimum increment for recording his time. They do not indicate that time was spent on claims that were not pursued. The records do indicate that Leefe met with his co-counsel on many occasions.

Most of these meetings were just prior to or during the trial. It was reasonable to have such meetings at that phase of the case. Leefe's billing records, however, do not reveal any evidence of billing judgment. The statement that billing judgment was exercised as the entries were made is insufficient. The plaintiffs failed to demonstrate that Leefe exercised billing judgment. The amount sought for Leefe for inclusion in the lodestar will be reduced by eight percent or 25.20 hours to 295 hours to account for the lack of billing judgment.

Associates

The plaintiffs request that the lodestar include sixty hours for two associates: Matthew Green, who was employed by Cimini; and Adam Massey, who was employed by Brener's firm.

Twenty-five hours is requested for Green. Rec. doc. 390 at p. 5. His time entries do not reveal any exercise of billing judgment. Cimini Affidavit, Exhibit 4. All of the entries are in January and February 2005. The descriptions demonstrate that he performed tasks that could have been performed by a paralegal or perhaps even by a secretary and charged to overhead. For example, the entry on January 28, 2005 states that he delivered documents to Brener's office. Id. The only described legal work is research on February 9, 2005. Id. at p. 2. Green's time will be treated as paralegal activity. The time was recorded in half-hour increments. His time will be reduced by fifteen percent or 4.00 hours to 21.00.

Thirty-five hours is sought for Massey. Rec. doc. 390 at p. 5. The billing statement for Brener's firm indicates that Massey's time was recorded in tenth of an hour segments. It reflects that some billing judgment was exercised, but the amount of time written off is not disclosed. Entries for January 18, 2005 for the preparation of a memorandum on the liability of the state and parish for

13

plaintiffs' damages were written off.  Brenner Affidavit, Exhibit A at p. 29.  This was a proper exercise of billing judgment.  Massey's legal research on this issue, however, was not written off. The entries for this research, which total 9.70 hours, must be written off.[11]  Massey's entries on March 7, 22 and 29, 2005 for travel to the courthouse were deleted, and entries on March 18 and 29, 2005 for travel to the courthouse totaling 1.10 hours should also be deleted.  Id., Exhibit A at pp. 42-48.  The hours sought for Massey shall be reduced by 11.00 hours from 35.00 to 24.00 hours.  No other reduction in Massey's time is required as it was almost exclusively legal research.

<u>Paralegals</u>

The plaintiffs seek to include time in the lodestar for three paralegals: Mindy LaBrosse, who worked for Donelon; Larry Murphy, who worked for Cimini; and Nicole Hill, who worked for Brener.  Jordan contends that the plaintiffs did not document that LaBrosse, Murphy and Hill were paralegals and contend they performed clerical tasks.  The United States Supreme Court held that purely clerical tasks should not be billed at a paralegal rate, regardless of who performs them. <u>Missouri v. Jenkins,</u> 491 U.S. 274, 109 S.Ct. 2463, 2472 n. 10 (1989), citing <u>Johnson</u>, 488 F.2d at 717.  <u>See also</u> <u>Spencer v. Apfel</u>, 1998 WL 264843 (E.D.La. May 21, 1998), in which Judge Clement refused to allow recovery for preparation of service of the complaint by certified mail, as the task could readily be performed by clerical personnel.  The plaintiffs contend that the work performed by the three paralegals was work that would have been performed by attorneys if the paralegals had not performed the tasks.  This issue can only be resolved by a review of the description of the tasks

---

[11]  The entries were on January 11, 12 and 17, 2005.  Brener's Affidavit, Exhibit A at pp. 24, 25, 28 and 29.

as found in the billing records.

The plaintiffs seek to include 72.50 hours for LaBrosse. Like Donelon, LaBrosse recorded her time in quarter hour segments. There is no evidence of billing judgment for LaBrosse's time. The tasks performed by LaBrosse, for example the preparation of the post-trial memorandum on front pay, would have been performed by an attorney. Donelon Affidavit, Exhibit 6. The hours sought by LaBrosse will be reduced by fifteen percent or 11.50 hours for the lack of billing judgment and the rounding up to quarter hour segments. 61.00 hours will be included in the lodestar for LaBrosse.

Murphy worked on the case in November 2004 and again in February 2005. Cimini Affidavit, Exhibit 5. In November 2004, Murphy telephoned the plaintiffs to receive financial loss documentation and other information for completion of a loss form. In February 2005, he provided assistance in the preparation of exhibits at Brener's office. The activity described by Murphy's entries is clerical. None of Murphy's time will be included in the lodestar.

The plaintiffs seek to include 132.30 hours for Nicole Hill. Rec. doc. 390 at p. 5. Her entries were recorded in tenths of an hour segments. While there is some evidence of billing judgment for Hill, some of Hill's entries were for the performance of secretarial tasks. For, example on August 25, 2004, there are fourteen entries concerned with telephone calls to the plaintiffs to set deposition dates and to schedule meetings prior to the depositions. Brener Affidavit, Exhibit A at pp. 4-6. The entries for secretarial and clerical tasks must be deleted. The total to be deleted is 18.30 hours.[12]

---

[12] The work to be deleted from Hill's entries may be found on:  August 25, 2004 (3.20); September 17, 2004 (1.80); September 22, 2004 (0.40); September 24, 2004 (0.40); October 4, 2004 (0.40); (October 8, 2004 (0.60); October 18, 2004 (1.00); October 20, 2004 (0.40); November 4, 2004 (0.20); December 14, 2004 (1.00);

114.00 will be included in the lodestar for Hill as a paralegal.

Law Clerks

Sean Brady, Jason Orgeron and Tessa Pousson were law clerks employed by Cimini to work on the case. Cimini Affidavit, Exhibit D at paras. 35-37. The plaintiffs seek to include 85 hours for these three law clerks. Rec. doc. 390 at p. 5. Jordan argues that the time is excessive and duplicative. The three law clerks recorded their time in quarter-hour segments and there is no evidence that billing judgment was used.

Some of Brady's time was secretarial or clerical. Cimini Affidavit, Exhibit 6. For example, there are entries for contacting the plaintiffs to request financial documents. The 38.75 hours sought for Brady will be reduced to 21.50 to account for the secretarial time.[13] The remaining time will be reduced by 1.5 to 20.00 hours to account for the use of quarter hour segments.

The plaintiffs seek to include 33.75 hours for Orgeron. Id., Exhibit 7. All of the entries describe clerical and secretarial tasks. None of Orgeron's time will be included in the lodestar.

The plaintiffs request that 12.50 hours be included in the lodestar for Pousson. Id., Exhibit 8. On May 27 and 31, 2005, she did legal research and analysis of the judgment. These entries for five hours will be included in the lodestar at the appropriate rate for a law clerk. The remaining entries were for telephone calls to the plaintiffs. This was clerical work and will be excluded from

---

January 5, 2005 (1.50); February 14, 2005 (0.30); February 28, 2005 (0.60); March 2, 2005 (1.10); March 4, 2005 (0.20); March 9, 2005 (1.60); March 16, 2005 (0.70); March 17, 2005 (1.00); March 18, 2005 (1.20); and March 21, 2005 (0.40). Brener Affidavit, Exhibit A.

[13] The entries that will be excluded from the lodestar were on: March 17, 2004; June 30, 2004; and July 1, 2, 12, 20 and 21, 2004. Cimini Affidavit, Exhibit 6.

the lodestar.

Summary of Hours Reasonably Expended

The reductions in the hours sought by the plaintiffs for each timekeeper are on shown on the table that follows:

| **Time Keeper** | **Hours Sought** | **Reduction** | **Hours in Lodestar** |
|---|---|---|---|
| Donelon | 1,690.50 | 202.50 | 1,488.00 |
| Cimini | 1,025.50 | 143.50 | 882.00 |
| Brener | 691.30 | 69.30 | 622.00 |
| Leefe | 320.20 | 25.20 | 295.00 |
| Green | 25.00 | 4.00 | 21.00 |
| Massey | 35.00 | 11.00 | 24.00 |
| LaBrosse | 72.50 | 11.50 | 61.00 |
| Murphy | 77.50 | 77.50 | 0.00 |
| Hill | 132.30 | 18.30 | 114.00 |
| Brady | 38.75 | 18.75 | 20.00 |
| Orgeron | 33.75 | 33.75 | 0.00 |
| Pousson | 12.50 | 7.50 | 5.00 |

b.  Reasonable Hourly Billing Rates.

As the second step in determining the lodestar, district courts must select an appropriate hourly rate based upon the prevailing community standards for attorneys of similar experience in

similar cases.  Shipes, 987 F.2d at 319, emphasis added.  In Islamic Center of Miss., Inc. v. City of Starkville, Miss., 876 F.2d 465, 469 (5th Cir. 1989), the Fifth Circuit held that if the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so.

The plaintiffs contend that the reasonable hourly rate for their lead attorney, Donelon, is $300 per hour.[14]  Rec. doc. 390 at p. 5.  In support, the plaintiffs submit the affidavits of Dale Williams and Barbara Haynie, in which they state that the appropriate hourly rate for Donelon is between $250 and $350.  Rec. doc. 358, Exhibits B and C.  Jordan contends that the hourly rate for Donelon should be $200.

In Lalla, Donelon and Cimini contended that their reasonable hourly rates were $185 and $150 per hour.  161 F.Supp.2d at 699.  Judge Livaudais found these rates to be reasonable based upon their background and experience.  Id.  Those rates were current at the time (April 4, 2001) of the Lalla decision.  161 F.Supp.2d at 710.  In Motton v. Lockheed Martin Corp., 900 So.2d 901 (La. App. 4th Cir. 2005), writ denied 904 So.2d 704 (La. 2005), Judge Robin Giarusso of the Civil District

---

[14] In Lalla v. City of New Orleans, 161 F.Supp.2d 686, 699 (E.D.La. 2001), Judge Livaudais described Donelon's experience as:

> Donelon has 25 years of experience handling employment discrimination cases.  He worked as an attorney handling employment discrimination charges filed against South Central Bell for three years, defending over 200 charges filed with the EEOC against South Central Bell.  He was then employed as a Trial Attorney with the New Orleans District Office of the EEOC for five years, litigating numerous cases filed under Title VII, the Equal Pay Act, and age discrimination laws in both Louisiana and Arkansas.  He left the EEOC and entered private practice, handling many plaintiffs' employment discrimination claims successfully and defending Jefferson Parish against employment discrimination charges on a part-time basis as an Assistant Parish Attorney.

Id. at p. 695-96.

Court for the Parish of Orleans determined that the proper hourly rate for Donelon was $200 per hour.[15] Donelon reports that he currently charges his hourly clients between $200 and $250 per hour.

Based upon the evidence submitted by the plaintiffs, the current reasonable hourly rate for Donelon, the plaintiffs' lead counsel, is $235 per hour. While it is lower than the range provided by Williams and Haynie, it is within the framework suggested by the Lalla and Motton decisions and within the range used by Donelon for his hourly clients.

The plaintiffs urge that $225 per hour is the reasonable hourly rate for Cimini. Rec. doc. 390 at p. 5. Williams and Haynie state that the appropriate hourly rate for him is between $175 and $225. Rec. doc. 358, Exhibits B and C. Jordan contends that the reasonable hourly rate for Cimini is $150. In Lalla, Cimini's rate was $150 per hour.[16] The passage of time since the date of the Lalla decision warrants an increase in Cimini's rate. During what the plaintiffs described as the procedural phase, Cimini was second chair to Donelon. As the trial approached the plaintiffs augmented their team first with Brener and then with Leefe. The plaintiffs seek hourly rates for all four of these attorneys, which the plaintiffs contend are commensurate with their experience. The plaintiffs ignore, however,

---

[15] The appeal was filed in 2003, so it is presumed that Judge Giarusso made her determination in late 2002 or sometime in 2003.

[16] Judge Livaudais described Cimini's experience as:

While Cimini had worked as an Assistant District Attorney in Orleans Parish prosecuting criminal cases, his primary civil experience was trying insurance defense cases for National Automotive Insurance Company. The instant actions are the only employment discrimination cases he has handled in this Eastern District of Louisiana, but prior to these cases, he had handled one case in the Middle District of Louisiana which was dismissed on summary judgment.

161 F.Supp.2d at 695. Since the Lalla decision, Donelon and Cimini have worked together on other employment discrimination claims.

the minimal amount of time requested for associates.[17] The plaintiffs' time is top heavy with lawyers with many years of experience and under-weighted with less experienced lawyers. If the comparison is made to a law firm, the plaintiffs staffed the case with senior partners and assigned very little work to associates. This may have been acceptable to the plaintiffs, but it is unreasonable to impose this burden on the defendant. Often times Cimini's role in the case more nearly approximated that of an associate. The substantial duplication of effort with Donelon has been noted. $165 per hour strikes a reasonable balance between the passage of four years since the Lalla decision and Cimini's support role in this case.

The plaintiffs request $275 for Brener and Leefe. Williams stated that the appropriate hourly rate for Brener was between $200 and $250 and for Leefe it was between $250 and $300. Rec. doc. 358, Exhibit B. Jordan contends that the reasonable hourly rate is $175 for Brener and $150 for Leefe. The court determined that $235 was the reasonable hourly rate for Donelon, who was the lead attorney for the plaintiffs. Both Brener and Leefe played secondary roles to Donelon. Notwithstanding their experience, their rates must be lower than Donelon's. Brener and Leefe will be assigned a rate of $215. This is consistent with the range urged by Williams for Brener and Leefe's secondary role in the presentation of the case.

The plaintiffs request that hourly rates for the remaining time keepers be set as follows: associates-$125; paralegals-$60; and law clerks-$35. Rec. doc. 390 at p.5. The defendant does not object to these rates. They will be used to determine the lodestar.

---

[17] The plaintiffs requested that more than 3,735 be included in the lodestar for Donelon, Cimini, Brener and Leefe and only 60 hours for associates.

c.  <u>Calculation of the Lodestar</u>.

The calculation of the lodestar based upon the undersigned's determination of the hours reasonably expended multiplied by the reasonable hourly rate is shown in the table below.

| **Time Keeper** | **Hours** | **Rate** | **Lodestar** |
|---|---|---|---|
| Donelon attorney | 1,488 | $235 | $349,680 |
| Cimini attorney | 882 | $165 | $145,530 |
| Brener attorney | 622 | $215 | $133,730 |
| Leefe attorney | 295 | $215 | $ 63,425 |
| Massey associate | 24 | $125 | $  3,000 |
| Paralegals | 196 | $ 60 | $ 11,760 |
| Law clerks | 25 | $ 35 | $      875 |
| **Total** | | | **$708,000** |

d.  Consideration of the twelve Johnson factors.

The plaintiffs requested that the lodestar be enhanced by $665,430.[18]

There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden of showing that such an adjustment is necessary to the determination of a reasonable fee.  When making an enhancement, the district court must explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the Johnson factors was applied.

Walker, 99 F.3d at 771 (Citations and quotation marks omitted).  The issue raised by the plaintiffs'

---

[18]  The plaintiffs requested that the hourly rates for the four primary attorneys be increased in two steps. The first step is described as a 25% hourly enhancement and the second step is a 33 1/3% overall enhancement.  Rec. doc. 390 at pp. 1-5.  The enhancement sought by plaintiffs is 64.8% of the requested lodestar.

request for an enhancement is whether a consideration of the <u>Johnson</u> factors warrants an increase in the lodestar.

The plaintiffs do not contend that the first factor (time and labor required), the fifth factor (customary fee), the sixth factor (whether the fee is fixed or contingent) or the eleventh factor (nature and length of the professional relationship with the client) require an adjustment to the lodestar.

The second factor is the novelty and difficulty of the question.  The Supreme Court has also greatly limited the use of this factor.  <u>Walker</u>, 99 F.3d at 771.  The plaintiffs contend that the case involved novel and difficult legal questions with overarching political questions.  Rec. doc. 358 at p. 11.  There is nothing in the orders and reasons issued by the District Judge that suggest that the case presented novel or difficult legal issues.

The third factor is the skill required to perform the legal services properly.  The Supreme Court has also greatly limited the use of this factor.  <u>Walker</u>, 99 F.3d at 771.  The plaintiffs contend that the case required enormous skill in a combination of areas, including civil rights, employment discrimination, evidence and statistical analysis.  Rec. doc. 358 at p. 11.  This issue is subsumed in the undersigned's lodestar determination of the hours reasonably expended.

> Even though Shipes's counsel presented extensive statistical data with competence, nothing less should be expected of counsel; consequently, this factor alone does not support enhancement.

<u>Shipes</u>, 987 F.2d at 321.

The fourth factor is the preclusion of other employment by the attorneys due to this case.  The seventh factor concerns the time limitations imposed by the client or the circumstances.  Priority work that delays the lawyer's other legal work is entitled to some premium.  <u>Johnson</u>, 488 F.2d at

22

718.  The plaintiffs urge that the four primary attorneys were not able to work on other cases during their involvement in this case and that for four months (three months before the trial and one month during trial) they spent the vast majority of their time on the case.  Rec. doc. 358 at p. 11.  These concerns, particularly the time demands, are ordinarily subsumed in the lodestar.  Shipes, 987 F.2d at 321-22.  The plaintiffs have not demonstrated why the fourth and fifth factors are not included in the lodestar.

The eighth factor is a comparison of the amount involved with the result obtained.  The plaintiffs contend an enhancement is warranted for the result obtained because:  (1) they prevailed under three separate statutes; (2) Jordan did not offer anything in settlement; (3) their victory is unique in its outcome (43 plaintiffs with a judgment for $2.4 million after a jury trial); and (4) the judgment received national attention.  The plaintiffs' counsel achieved a very substantial victory.  Although the plaintiffs were not the prevailing parties on the individual claims against Jordan, they were completely vindicated on their official capacity claims against him.  And although Jordan did not offer anything in settlement, he contended that he was without funds to use to settle the case.  There is no evidence to the contrary.

In Shipes, 987 F.2d at 322, the Fifth Circuit found that enhancement of the lodestar was not supported by the evidence.  It remanded the case for a determination as to whether it was customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result.  There is no such evidence before the Court.  In Johnson, the Fifth Circuit held, in discussing the eighth factor, that, "[i]f the decision corrects across-the-board discrimination affecting a large class of an employer's employees, the attorney's fee award should reflect the relief granted."  488 F.2d at

718-19.  The effect of the instant judgment is confined to the plaintiffs.  An enhancement for the results obtained is not warranted.

The ninth factor is the experience, reputation and ability of counsel.  The plaintiffs contend that this factor warrants an increase in the lodestar, but it is covered by the rates used in the determination of the lodestar.

The tenth factor is the undesirability of the case.  The plaintiffs cite the undesirability of employment cases in general and in particular one against the District Attorney for Orleans Parish. Donelon's resume indicates that he has spent much of his career trying employment cases. Since the Lalla case, Cimini and Donelon have worked together on several employment cases.  Both Brener and Leefe describe extensive experience in employment litigation.  The record does not demonstrate that employment cases in general are undesirable.  There is no evidence that the representation of the plaintiffs in this litigation either harmed the practice of any of the attorneys for the plaintiffs or angered their friends and allies.  See Walker, 99 F.3d at 772.

The plaintiffs cite the anticipated delay in payment of the judgment as demonstrating the undesirability of the case and state:

> Although all three have paid significant amounts for expert fees and litigation costs, none has received a cent for his/her representation.  Additionally, given the financial condition of OPDAO, it is unlikely that any of the Plaintiffs' four (4) Counsel will be getting paid any time soon.

Rec. doc. 358 at p. 22.  The first element in this issue is the delay since the filing of the case more than two years ago.  This is resolved by the use of current rates in the determination of the lodestar. Walker, 99 F.3d at 733.

The second element is the anticipated delay in payment of a final judgment. Even before Hurricane Katrina there was a substantial risk of delay in payment of any judgment against Jordan. The City's woeful fiscal condition was well known at the time the suit was filed. The attorneys' concern about how they might be paid is demonstrated by Brener's legal research on the issue. The risk of a substantial delay in payment and even no payment at all was assumed by the attorneys for the plaintiffs. They could have declined the representation.

The plaintiffs' request for attorneys' fees has not been penalized for their failure to prevail on the claims against Jordan in his individual capacity. When the plaintiffs lost this claim, they lost some leverage over Jordan in their effort to obtain payment of their judgment. If the lodestar is increased because of the anticipated delay in payment after the judgment, it would offset, in part, the failure of the plaintiffs to succeed on the individual capacity claim. There is no basis to "reward" the plaintiffs for their lack of success on that claim. The lodestar will not be increased because of the anticipated delay in payment after the judgment.

The twelfth factor requires the Court to consider awards in similar cases. In Johnson, 488 F.2d at 719, the Fifth Circuit held that the reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit. Among the decisions cited by the plaintiffs are:  Hopwood v. State of Texas, 999 F.Supp. 911 (W.D.Tex. 1998, affirmed, 236 F.3d 256, 277-81 (5th Cir. 2000) ($704,000 in attorneys' fees for four plaintiffs who challenged affirmative action plan); Brady v. Fort Bend County, 145 F.3d 691, 716-17 (5th Cir. 1998) ($751,000 attorneys' fees for six plaintiffs who obtained a damage award of only $401,0000); and Lalla ($251,000 in attorneys' fees to eleven plaintiffs who settled their claims for $500,000).  The

25

plaintiffs state this case involved four times as many plaintiffs as did <u>Lalla</u>. If that decision is used

as a benchmark, they urge that they should be awarded $1,411,676 in attorneys' fees.

The number of plaintiffs in the instant case, forty-three, does not require an increase in the

lodestar. The jury found that Jordan violated the plaintiffs' civil and/or constitutional rights. The

core facts on the racial discrimination issue were the same for each plaintiff and in fact the number

of plaintiffs increased the impact of the statistical evidence used to prove the case. To the extent that

the number of plaintiffs increased the work load of their attorneys, for example on the issue of

damages, the lodestar compensates for this additional time.

CONCLUSION

> To put these guidelines into perspective and as a caveat to their application, courts must remember that they do not have a mandate under Section 706(k) to make the prevailing counsel rich. Concomitantly, the Section should not be implemented in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general. The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation. Adequate compensation is necessary, however, to enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession. The guidelines contained herein are merely an attempt to assist in this balancing process.

<u>Johnson</u>, 488 F.2d at 719-20. The undersigned has sought to maintain this perspective in responding

to plaintiffs' application and Jordan's opposition to it. After consideration of the plaintiffs' motion,

the record and the applicable law and for the reasons assigned,

IT IS RECOMMENDED that the plaintiffs be awarded attorneys' fees of $708,000.00.

OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. USAA</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this **14** day of November, 2005.

SALLY SHUSHAN
**United States Magistrate Judge**

27