UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDITH L. DECORTE, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO: 03-1239-SRD-SS** |
| **EDDIE JORDAN, et al** | |

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a report and recommendation on the proper amount of fees and expenses for expert witnesses to be awarded to plaintiffs. Rec. doc. 433. Forty-three plaintiffs prevailed in their employment discrimination claims against the defendant, Eddie Jordan ("Jordan"), in his official capacity. Rec. doc. 404. The plaintiffs seek an award of fees and expenses for experts of $74,556.08. Rec. doc. 358 at pp. 22-23.

## ANALYSIS

The plaintiffs demonstrate that, pursuant to Title VII, 42 U.S.C. § 2000e-5(k), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs. . . ." The plaintiffs contend they have necessarily incurred expert fees and expenses for litigating the case. See Donelon affidavit at p. 10, Exhibit A to Rec. doc. 358. Jordan

acknowledges that Title VII allows for the recovery of experts' fees, but contends that, like attorneys' fees, they must be reasonable. He urges that the amounts sought by the plaintiffs are unreasonable.

1. <u>Phillip Garrett, C.P.A.</u>

The plaintiffs seek $60,168.47 for the services of Philip Garrett, C.P.A. and his firm, Wegmann-Dazet & Company ("Wegmann"). Garrett prepared a report on the plaintiffs' damages. He was deposed and testified at the trial. In determining the amount of front pay to be awarded to the plaintiffs, the District Court stated:

> The Court's award is based on the testimony of Philip Garret, CPA, who testified as an expert witness for the plaintiffs. The Court found his methodology to be sound, his calculations to be accurate and took into consideration all relevant factors. . . .

<u>Decorte v. Jordan</u>, 2005 WL 1431699, *3 (Duval, J.).

Jordan contends that Garrett's fee is not reasonable because: (1) his hourly rate of $240 per hour is excessive; (2) the plaintiffs failed to provide evidence of the reasonable hourly rate for certified public accountants; (3) his report and testimony had very limited impact; (4) his firm's billing records include time spent in preparing for and testifying at his deposition, for which he has already been compensated; (4) the billing records include vague and excessive time entries; (5) Garrett merely complied data into a pre-existing template; and (6) the billing records do not demonstrate any billing judgment. Jordan also challenges particular time entries. The plaintiffs reply that Garrett's fee per plaintiff of $1,400 ($60,168.47 divided by 43) was reasonable.

The plaintiffs submitted a statement, dated November 30, 2004, from Wegmann, which

includes time entries for Garrett and others for November 11, 2004 through March 22, 2005.[1] The entries reveal the amount of time and the hourly rate for each time keeper. There is no summary of the total hours for each timekeeper.[2] The statement reports a total for services of $60,528.24, which is the product of the hours recorded in the statement times the hourly rates for each timekeeper. The total is increased by $1,280.23 for expenses incurred by Garrett's firm and reduced by a courtesy discount of $1,640.00 for a net amount is $60,168.47.

Garrett, Anita Zimmer, Barbara Frye and Leticia Legaspi were the principal timekeepers. After meeting with counsel for the plaintiffs in mid-October, 2004, Garrett and Zimmer prepared the initial format, including a spreadsheet, for the damage claim. Jordan focuses on the entry for October 11, 2004 in the Wegmann Statement that refers to pulling a template for damages input. Jordan contends that the excessiveness of the charges is demonstrated by Garrett's use of a pre-existing template for the entry of the data. The entries demonstrate that there was more to the report than pulling a template and inserting data. The entries reveal that Garrett and his staff worked to set up schedules that were reviewed by counsel for the plaintiffs. See Wegmann Statement entries for October 12-15, 21, 22 and 25.

Legaspi performed the data entry. Zimmer reviewed some information received from the attorneys and the preliminary results from the data entry. She updated Garrett with progress reports. As the report developed, she made changes to account for particular issues, for example COBRA

---

[1] Exhibit 2 to Donelon Affidavit, which is Exhibit A to Rec. doc. 358 ("Wegmann Statement").

[2] The absence of a summary for the Wegmann timekeepers requires that the lodestar be derived by backing out those the sums for time which was not reasonably spent on the report or the portion of the charges with an excessive hourly rate. This is summarized in the table on page 9.

costs. By November 12, 2004, the data entry was largely complete. Garrett and Zimmer made changes in the report. Frye also began working on changes in the report. This work demonstrates that there was much more to the report than merely pulling a template and entering data. On November 19, 2004, the report was completed and delivered to counsel for the plaintiffs. In late November, Zimmer and Frye made further changes to some schedules within the report and assembled their work papers for production at the end of December.

On January 12, 2005, Zimmer began preparing for Garrett's deposition, which took place on January 14, 2005. Some of the entries for January 12 and 13 are described as preparation for the deposition. Other entries are more specific. For example, on January 13, 2005 and at Zimmer's request, Legaspi checked the calculations for lost wages and benefits. On January 12 and 13, two other time keepers, Haro and Foley-Richard, performed tasks. After the deposition, Frye worked on issues that arose during the deposition. Some further changes were made in the report after the deposition. Frye completed and copied a revised report on February 25, 2005. After additional review, further revisions were made. The revised report was submitted to counsel for plaintiffs on March 8, 2005.

On March 9, 2005, Garrett began preparing for his testimony at the trial. On March 15 and 16, Frye and others worked on further calculations associated with vacation pay. Garrett testified on March 17, 2005. On March 21 and 22, Garrett worked on preparation for the cross-examination of Jordan's expert.

The District Court relied on Garrett's report in determining the amount owed to the plaintiffs. The broad outline of the work performed by Garrett and his firm was reasonable. Jordan's

contention that Garrett's fee should be reduced because his report and testimony had very limited impact is without merit. Jordan argues that the rates charged and time spent for data entry and the review and edit of the data were excessive. These arguments ignore the importance of achieving accuracy in the report and the District Court's finding of accuracy.

Jordan states that Garrett was previously compensated for time spent in deposition preparation and testifying at the deposition. This is not disputed by plaintiffs. In the absence of any information from the plaintiffs on this issue and based on the description of the time entries, the court finds that the charges for January 12, 13 and 14, 2005 must be excluded as time spent either in preparation for Garrett's deposition or testifying at his deposition. The adjustment required for these entries is as follows:

| Timekeeper | Date | Hours | Rate | Total |
|---|---|---|---|---|
| Zimmer | 1/12/05 | 3.00 | 132 | $ 396.00 |
| Zimmer | 1/12/05 | 7.00 | 132 | 924.00 |
| Haro | 1/13/05 | 0.60 | 57 | 34.20 |
| Frye | 1/13/05 | 2.70 | 86 | 232.20 |
| Legaspi | 1/13/05 | 4.40[3] | 86 | 378.40 |
| Garrett | 1/13/05 | 2.00 | 240 | 480.00 |
| Foley-Richard | 1/14/05 | 0.50 | 81 | 40.50 |
| Garrett | 1/14/05 | 8.00 | 240 | 1,920.00 |
| Total for deposition preparation and deposition | | | | $4,405.30 |

There is merit to Jordan's contention that the billing records for Garrett's firm include vague and excessive time entries. The entries for one of the timekeepers, Passafume, are vague and suggestive of clerical overhead, which must be excluded. These entries are:

---

[3] There were nine separate entries for Legaspi on January 13, 2005 that are combined into one entry on this table.

| Timekeeper | Date | Hours | Rate | Total |
|---|---|---|---|---|
| Passafume | 10/15 | 0.50 | 63 | $ 31.50 |
| | Scope of work to be performed. | | | |
| Passafume | 11/01 | 0.20 | 63 | 12.60 |
| | Report to L. Brener - partner hourly fee. | | | |
| Passafume | 11/02 | 0.20 | 63 | 12.60 |
| | Report to L. Brener concerning fees. | | | |
| Passafume | 11/09 | 0.80 | 63 | 50.40 |
| | Report on summary of findings. | | | |
| Passafume | 11/11 | 1.00 | 63 | 63.00 |
| | Summary of findings. | | | |
| Passafume | 11/15 | 0.50 | 63 | 31.50 |
| | Summary of findings. | | | |
| Passafume | 11/17 | 1.00 | 63 | 63.00 |
| | Summary of findings. | | | |
| Passafume | 11/18 | 1.00 | 63 | 63.00 |
| | Summary of findings. | | | |
| Passafume | 11/19 | 0.50 | 63 | 31.50 |
| | Summary of findings. | | | |
| Passafume | 01/17 | 0.20 | 63 | 12.60 |
| | Letter to L. Brener re out-of-town from 2/28 to 3/5. | | | |
| Passafume | 03/08 | 1.40 | 63 | 88.20 |
| | Revised report and summary of findings. | | | |
| Total for Passafume | | 7.30 | 63 | $459.90 |

Other entries are unexplained or associated with clerical overhead and shall be excluded.  These are:

| Timekeeper | Date | Hours | Rate | Total |
|---|---|---|---|---|
| Ehricht | 11/01 | 3.00 | 81.00 | 243.00 |
| | No explanation. | | | |
| Williams | 11/08 | 0.10 | 52.00 | 5.20 |
| | Copies. | | | |
| Ehricht | 11/19 | 1.50 | 81.00 | 121.50 |
| | Printed reports and hand delivered reports. | | | |
| Zimmer | 11/29 | 4.00 | 127.00 | 508.00 |
| | File and organize documents for plaintiffs. | | | |
| Frye | 12/01 | 0.10 | 86.00 | 8.60 |
| | Talk to Leticia about filing documents for the case. | | | |

| | | | | |
|---|---|---|---|---|
| Frye | 12/22 | 2.50 | 86.00 | 215.00 |
| | Copy file for attorney and put workpaper binder together. | | | |
| Haro | 03/11 | 0.70 | 57.00 | 39.90 |
| | Punch holes and file in book updated schedules for all involved. | | | |
| Haro | 03/15 | 0.60 | 57.00 | 34.20 |
| | Revisions. | | | |
| Langley | 03/16 | 0.75 | 42.00 | 31.50 |
| | No explanation. | | | |
| | Total | | | 1,206.90 |

The Wegmann Statement does not reveal any evidence of billing judgment. This issue was addressed in part by the removal of vague and unexplained entries or entries associated with overhead. All of Garrett's entries are in full hour increments, except for three entries in half-hour increments. The other timekeepers demonstrated an ability to record time in tenths of an hour.[4] Excluding Garrett's entries for preparation for his deposition and testifying at his deposition, there are twenty-three entries for Garrett. These are summarized as follows:

| Date | Hours | Date | Hours | Date | Hours |
|---|---|---|---|---|---|
| 10/11 | 2.00 | 11/16 | 3.00 | 03/11 | 1.50 |
| 11/01 | 0.50 | 11/17 | 8.00 | 03/14 | 8.00 |
| 11/10 | 3.00 | 11/18 | 4.00 | 03/15 | 10.00 |
| 11/11 | 1.50 | 11/19 | 6.00 | 03/16 | 8.00 |
| 11/11 | 3.00 | 11/24 | 1.00 | 03/17 | 8.00 |
| 11/12 | 2.00 | 02/25 | 1.00 | 03/21 | 4.00 |
| 11/15 | 1.00 | 03/08 | 3.00 | 03/22 | 1.00 |
| 11/15 | 3.00 | 03/09 | 1.00 | | |
| | 16.00 | Plus | 27.00 | Plus | 40.50 = 83.50 |

The report and recommendation for the plaintiffs' attorneys' fees imposed an adjustment on the time sought by Donelon and others where there was no explanation for the use of quarter-hour segments.

---

[4] See for example, numerous entries by Legaspi beginning on October 25, 2004. Other examples are Zimmer on November 17, 2004 and Frye on December 1, 2 and 3, 2004.

7

Rec. doc. 407 at p. 7. A reduction of five hours or $1,200 is warranted for Garrett's failure to use increments of less than one half hour to record his time. The absence of billing judgment does not require any further adjustment.

The remaining issue is the reasonableness of the hourly rates. The plaintiffs did not submit any information on the experience of Garrett and the other timekeepers or any affidavits on the reasonableness of their hourly rates. Jordan questions the reasonableness of Garrett's rate of $240 per hour. The highest approved rate for any of plaintiffs' counsel was $235 per hour for Mr. Donelon. The rates for Ms. Brener and Mr. Leefe were $215 per hour. In light of these rates and in the absence of any other guidance from the parties, the reasonable hourly rate for Garrett is $200 per hour. The rates for the remaining Wegmann timekeepers are unchanged. The effect of the reduction of Garrett's hourly rate is determined as follows:

| | | |
|---|---|---|
| Hours in billing statement | | 83.50 |
| (Exclusive of deposition preparation and testimony at deposition) | | |
| Less reduction for use of half hour increments | | 5.00 |
| Reasonable hours for Garrett | | 78.50 |
| Reasonable hours times requested rate | 78.50 times 240 equals | $18,840.00 |
| Reasonable hours times reasonable rate | 78.50 times 200 equals | 15,700.00 |
| Reduction required by reduction in hourly rate | | $ 3,140.00 |

The effect of all of these adjustments on the "lodestar" of $60,528.34 sought by plaintiffs for Garrett is as follows:

|  |  |  |
|---|---|---|
| Plaintiffs' "Lodestar" |  | $60,528.24 |
| Less |  |  |
| 1. Deposition preparation and deposition | 4,405.30 |  |
| 2. Passafume charges | 459.90 |  |
| 3. Unexplained or clerical charges | 1,206.90 |  |
| 4. Garrett's improper billing increments | 1,200.00 |  |
| 5. Reduction in Garrett's hourly rate | 3,140.00 |  |
|  |  | $10,412.10 |
| Recommended Lodestar |  | 50,116.14 |
| Plus expenses |  | 1,280.23 |
|  |  | $51,396.37 |

Accordingly, the reasonable fee, including expenses, for Garrett is $51,396.37.

2.   Max H. McDaniel, Ph.D.

The plaintiffs retained Dr. McDaniel of Personnel Assessment & Research Center, LLC. He prepared a report on the statistical composition of Jordan's office before and after he took office. He began working on the report in October, 2004 and the report was completed by November 17, 2004.[5] On January 18, 2005, Dr. McDaniel was deposed, and o n January 21, 2005 he testified at the trial. His statement indicates he spent a total of 78 hours on activities for the plaintiffs. His time was billed at the rate of $150 per hour for a total of $11,700. Dr. McDaniel's statement does not include any expenses, for example mileage to and from his office in Jackson, Mississippi. The plaintiffs seek reimbursement of Dr. McDaniel's hotel bills for March 14 and 21, 2005 in the amount of $307.61, which were paid by plaintiffs' attorneys. They also seek $650 for Nancy Van Nortwick of Baton Rouge, Louisiana, who did research for Dr. McDaniel. Her statement reports thirteen hours

---

[5] Exhibit 3 to Donelon Affidavit, which is Exhibit A to Rec. doc. 358.

of research at $50 per hour. The total sought for Dr. McDaniel's work may be summarized as follows:

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| McDaniel | 150 | 78 | $11,700 |
| Nortwick | 50 | 13 | 650 |
| Subtotal | | | $12,350 |
| Expenses (Lodging 3/14 and 21) | | | 308 |
| Total | | | $12,658 |

Jordan does not challenge: (1) the reasonableness of the hourly rates for Dr. McDaniel or Nortwick; (2) Dr. McDaniel's time spent in preparation of his report or in connection with his deposition; or (4) his lodging expenses.[6] Jordan challenges the following entries for Dr. McDaniel:

| Date | Activity | Hours |
|---|---|---|
| 3/14 & 15[7] | Trial observation and preparation | 16.0 |
| 3/19 | Study trial materials | 3.0 |
| 3/20 | To New Orleans for preparation | 8.0 |
| 3/21 | Testimony | 8.0 |

Jordan contends that sixteen hours for March 14 and 16, 2005 is excessive and the entries are vague. On Monday, March 14, 2005, Decorte, Helmer and six other plaintiffs' testified. Rec. doc. 302. On Tuesday, March 15, 2005, nine of the plaintiffs testified. Rec. doc. 303. On both days the four primary counsel for the plaintiffs (Donelon, Brener, Leefe and Cimini) were shown as in court throughout the proceedings. Rec. docs. 302-03. It is presumed that on those two days Dr. McDaniel

---

[6] Jordan does not contend that Dr. McDaniel was paid for his deposition.

[7] Dr. McDaniel's statement erroneously refers to these dates as in January of 2005. The trial was in March of 2005.

observed the proceedings and met with plaintiffs' counsel during breaks and at the end of the day. He spent the evening of March 14 in New Orleans. It was reasonable for Dr. McDaniel to spend these two days in this manner. Considering the absence of any travel time or expenses charged by Dr. McDaniel and the need for plaintiffs' counsel to meet with him at the end of the day, the charges for March 15 and 16, 2005 are reasonable.

Jordan contends that the travel time to New Orleans on March 20, 2005 was excessive. On March 21, 2005, Dr. McDaniel testified in the morning for a little more than three hours. He returned to the witness stand after the lunch break for an undisclosed amount of time. In the afternoon two more witnesses testified. The plaintiffs rested. The District Judge heard argument on Jordan's motions, before adjourning at 5:00 p.m. Rec. doc. 319. Considering Dr. McDaniel's preparation time, the eight hours on March 20, 2005 were excessive.[8] The entry, "[t]o New Orleans for preparation," suggests it was spent in transit. The entry is vague and does not fully account for the time, eight hours, attributed to it. Dr. McDaniel's time will be reduced by four hours or a total of $600.

Jordan contends that none of the time for Nortwick should be included for Dr. McDaniel's services, because she did not testify at the trial and the research she completed was not included by him in his report. Nortwick's statement reveals that the research was on the relevant labor market in five parishes, education levels in the New Orleans area from the 2000 Census, workforce trends

---

[8] Dr. McDaniel spent two days in preparation on March 14 and 15, 2005 and three hours on March 19, 2005 in study of the trial materials.

11

in the New Orleans area and a racial comparison of education levels for non-attorney positions.[9] Even if her research was not directly included in Dr. McDaniel's final report, it was pertinent to the subject of his report. It was reasonable for Dr. McDaniel to have this research performed by someone at a much lower hourly rate, $50 for Nortwick, than Dr. McDaniel's rate of $150. Nortwick's fee is reasonable.

3.   Leighton Stamps, Ph.D.

Dr. Stamps consulted with four of the plaintiffs and prepared a report. He is the Chairman of the Department of Psychology at UNO. He submitted a statement, dated December 15, 2004, in the amount of $805 for preparation of his report.[10] Jordan does not challenge this statement. Dr. Stamps also submitted a statement for March 30, 2005 in the amount of $925 which included a charge of $790 for two hours time to appear in court on March 18, 2005 and testify. Jordan contends that $790 is unreasonable. On March 18, 2005, Jordan testified in the morning and returned to the stand after the lunch break. Three more witnesses testified after Jordan was excused in the afternoon. Dr. Stamps was the last witness of the day. The afternoon session lasted about two and half hours. Rec. doc. 306. It was reasonable for Dr. Stamps to charge for two hours of time for his court appearance on March 18, 2005. His hourly rate was $395.00, which is excessive. A reduction to $250 per hour will be recommended. This will reduce Dr. Stamps' March 30, 2005 statement by $290 to $635, bringing the total for Dr. Stamps to $1,440.00

## RECOMMENDATION

---

[9] Exhibit 5 to Donelon Affidavit, which is Exhibit A to Rec. doc. 358.

[10] Exhibit 4 to Donelon Affidavit, which is Exhibit A to Rec. doc. 358.

IT IS RECOMMENDED that the plaintiffs be awarded fees and expenses for experts in the amount of $64,894.37 for the following:

| | |
|---|---|
| Phillip Garrett, CPA | $51,396.37 |
| Max McDaniel, Ph.D. | 12,058.00[11] |
| Leighton E. Stamps, Ph.D. | 1,440.00 |
| Total | $64,894.37 |

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. USAA, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 20th day of March, 2006.

                                                        SALLY SHUSHAN
                                                        United States Magistrate Judge

---

[11] This includes $650 for Nortwick's research and McDaniel's lodging expenses of $308.00.